**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

**LEE A. CROY**                                                                    **PETITIONER**

**VS.**                          **CASE NO. 5:12V00010 JMM/HDY**

**RAY HOBBS, Director of the**
**Arkansas Department of Correction**                          **RESPONDENT**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Court

Judge James M. Moody.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal basis for

the objection.  If the objection is to a factual finding, specifically identify that finding and the

evidence that supports your objection.  An original and one copy of your objections must be

received in the office of the United States District Court Clerk no later than fourteen (14) days

from the date of the findings and recommendations.  The copy will be furnished to the opposing

party.   Failure to file timely objections may result in waiver of the right to appeal questions of

fact.

If you are objecting to the recommendation and also desire to submit new, different, or

additional evidence, and to have a hearing for this purpose before the District Judge, you must, at

the same time that you file your written objections, include the following:

　　　1.　　　Why the record made before the Magistrate Judge is inadequate.

　　　2.　　　Why the evidence proffered at the hearing before the District
　　　　　　　Judge  (if such  a  hearing is granted)  was not  offered at  the
　　　　　　　hearing before the Magistrate Judge.

　　　3.　　　The detail of any testimony desired to be introduced at the

1

> hearing before the District Judge in the form of an offer of
> proof,  and a copy,  or the original, of any documentary or
> other non-testimonial evidence desired to be introduced at
> the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional

evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

Lee A. Croy filed an application for writ of habeas corpus pursuant to 28 U.S.C. §2254.

Mr. Croy, who is currently in the custody of the Arkansas Department of Correction (ADC), was

convicted following a 2006 jury trial in Pulaski County on the charge of two counts of sexual

assault and sentenced to an aggregate term of thirty years of imprisonment.  He appealed the

conviction[1], and the Arkansas Court of Appeals affirmed.  *Croy v. State*, CACR 06-1039, 2007

WL 3172144 (Ark. App. Oct. 31, 2007).  Mr. Croy subsequently filed a Rule 37 petition,

alleging four instances where his trial counsel rendered ineffective assistance of counsel.

Following a hearing, the trial court denied relief.  On appeal, the Arkansas Supreme Court

affirmed the trial court.  *Croy v. State*, 2011 Ark. 284 (Ark. June 23, 2011).

Mr. Croy now advances twelve claims for habeas corpus relief:

1.     The trial court erred in denying his motion for continuance;

2.     The trial court erred by not requiring the state to produce witness statements;

3.     The trial court erred in admitting 404(b) evidence;

---

[1]On direct appeal, Mr. Croy contended that the trial court erred in the following: (1) denying his motion for a continuance due to the unavailability of a witness; (2) not requiring the prosecution to produce witness statements; (3) admitting the testimony of three witnesses who were allegedly sexually assaulted by Croy; and (4) admitting victim-impact testimony from witnesses who testified they were sexually assaulted by Croy.

4.      The trial court erred by allowing the state to present victim-impact testimony from the 404(b) witnesses;

5.      Croy's counsel was ineffective for failing to conduct an adequate investigation and review regarding the skin tag near Croy's genitalia;

6.      Croy's counsel was ineffective for failing to investigate and present testimony from numerous character witnesses;

7.      Croy's counsel was ineffective for failing to lodge an appropriate objection to the state's presentation of 404(b) testimony;

8.      Croy's counsel was ineffective for failing to take proper steps to obtain and review statements from the prosecutor's file;

9.      The trial court erred by finding that Croy's counsel was not ineffective when he failed to properly investigate or take proper photographs of a skin tag near Croy's genitalia;

10.     The trial court erred when it found that Croy's counsel was not ineffective for failing to investigate and present testimony of other character witnesses;

11.     The trial court erred when it found that Croy's counsel was not ineffective for failing to lodge an appropriate objection to the testimony of the state's 404(b) witnesses; and

12.     The trial court erred when it failed to find that Croy's counsel was ineffective for failing to obtain, review, and use the prosecution's notes regarding interviews of two witnesses.

The respondent contends that claims one, three and four are not properly before this Court due to the petitioner's failure to adequately raise his claims in a properly filed state postconviction petition, as required by *Wainwright v. Sykes*, 433 U.S. 72 (1977), and its progeny. By an earlier Order of the Court, the petitioner was notified that dismissal of these claims was possible on the basis of procedural default.  Mr. Croy was further notified of his opportunity to

explain why these claims should not be dismissed, and he filed a responsive pleading.  See docket entry no. 18.  We will first address whether claims one, three and four are procedurally barred, then consider the claims before the Court.

In *Wainwright v. Sykes, supra*, the United States Supreme Court held that a federal court should not reach the merits of a litigant's habeas corpus allegation if he has procedurally defaulted in raising that claim in state court:  that is, if he was aware of the ground, but failed to pursue it to a final determination.  The exception created by the Supreme Court permits such an allegation to be addressed if the litigant can establish "cause" for his failure to assert the known ground and "prejudice" resulting from that failure.  *See, also, Clark v. Wood*, 823 F.2d l24l, l250-5l (8th Cir. l987); *Messimer v. Lockhart*, 822 F.2d 43, 45 (8th Cir. l987).  The *Wainwright v. Sykes* cause and prejudice test was clarified by two subsequent Supreme Court decisions, *Smith v. Murray*, 477 U.S. 527 (l986), and *Murray v. Carrier*, 477 U.S. 478 (l986).

With respect to cause, these cases explain that the Court has "declined in the past to essay a comprehensive catalog of the circumstances that [will] justify a finding of cause." *Smith v. Murray*, 477 U.S. 533-34.  However, one can discern from these cases several circumstances in which cause might be found:  first, where some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rules, *see Murray v. Carrier*, 477 U.S. at 488; second, where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, *see Reed v. Ross*, 468 U.S. l (l984); or third, if the litigant failed to receive the effective assistance of counsel.  *See Murray v. Carrier*, 477 U.S. at 488.  In addition, there is one extraordinary circumstance where a federal habeas court may grant relief without a showing of cause:  where a constitutional violation has probably resulted in the conviction of one who is actually innocent.  *Id.* at 496.

Claims one, three and four are challenges to trial court rulings – the denial of a motion to continue, the admission of 404(b) evidence, and the admission of victim-impact evidence from the 404(b) witnesses.  The respondent concedes that Mr. Croy raised these claims in state court,

but the respondent urges that the claims were couched as state court violations and were not

identified as federal constitutional violations, a prerequisite to raising such claims in a habeas

corpus proceeding. *Carney v. Fabian*, 487 F.3d 1094, 1096 (8th Cir. 2007) (allegation that trial

court misapplied Minnesota statutes and case law insufficient to state a federal due process

challenge).

In response, Mr. Croy cites the Court to various references in his state court direct appeal

brief. These citations show that Mr. Croy cited federal cases in support of claims one, three and

four, as well as made specific references to due process violations. As a result, for the purpose

of this Finding and Recommendation we assume that the petitioner adequately presented these

claims in state court as constitutional challenges, and we will consider the merits of the claims.

**Claims 1-4:**     The first four claims of Mr. Croy are challenges to rulings of the trial

judge. In the context of a habeas case, these are all due process challenges. As such, Mr. Croy

must meet the following standard to secure habeas relief on any of these four claims:

> In order to establish a denial of due process, the petitioner must prove that
> the asserted error was so gross, *Taylor v. Minnesota*, 466 F.2d 1119, 1121 (8th Cir.
> 1972), *cert. denied*, 410 U.S. 956 (1973), conspicuously prejudicial, *United States
> ex rel. Cannon v. Maroney*, 373 F.2d 908, 910 (3rd Cir. 1967), or otherwise of
> such magnitude that it fatally infected the trial and failed to afford the petitioner
> the fundamental fairness which is the essence of due process. *Lisenba v.
> California*, 314 U.S. 219 (1941). In making this determination, the courts must
> review the totality of the facts in the case pending before them and analyze the
> fairness of the particular trial under consideration.

*Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. 1976). See also *Kennedy v. Kemma*, 666 F.3d 472, 481

(8th Cir. 2012).

The petitioner's first allegation of a due process violation is that the trial court erred in

denying his motion for continuance. This issue was raised on direct appeal and addressed by the

Arkansas Court of Appeals in the following manner:

> Because Croy does not challenge the sufficiency of the evidence, we offer only
> a brief recitation of the facts. The victim, who was eighteen years old at the time
> of the trial, testified that on his first day of his freshman year at Parkview Arts
> and Science Magnet High School he met Croy, who was thirty-eight years old at

the time and was the campus-security guard. They began spending time together not only at school but also outside of school. The victim joined Croy's pit crew (Croy was a race-car driver), and the victim accompanied Croy to his volunteer fire-fighter job. The victim testified that he spent the night with Croy, who lived with his mother. When asked about his feelings for Croy during this time, the victim testified, "I felt like we had become really, really good friends[,] like best friend kind of friend and then I even began to kind of think of him as like a father figure."

One day, Croy put his hand down the victim's pants and fondled his penis. The fondling occurred every time they were together thereafter, and eventually progressed to oral sex, which occurred between ten and fifty times. The victim testified that Croy attempted to have anal sex with the victim on three occasions. The victim further testified that during this time his relationship with his parents "got really bad." "Tony would always tell me how bad my parents were for me and I believed that, so I never wanted to be around them." The victim testified that he became suicidal and began to engage in self-mutilation because he could not handle the situation with Croy. Eventually, the victim told his mother that he did not want to see Croy anymore, and he asked her to contact Croy to tell him to discontinue all future contact.

At trial, Croy admitted knowing the victim and that they "had a good friendship." However, Croy testified that he absolutely never had sex with the victim or inappropriately touched him. Each of Croy's four points on appeal revolve around evidentiary rulings. His first point is that the trial court erred in denying his motion for continuance. We review the grant or denial of a motion for continuance under an abuse-of-discretion standard. *Smith v. State,* 352 Ark. 92, 98 S.W.3d 433 (2003). An appellant must not only demonstrate that the trial court abused its discretion by denying the motion for a continuance, but must also show prejudice that amounts to a denial of justice. *Id.*

Four days before trial, Croy moved for a continuance arguing that one of his material witnesses, Sean Flynn, was unavailable for trial due to surgery. Croy filed an amended motion for continuance two days before trial claiming that Flynn would testify that he knew Croy well, spent significant time with Croy, and "emphatically denies that there was any sexual contact between he and [Croy]...." The trial court denied the motion.

Croy argues that Flynn's testimony was essential to the defense of his case as Flynn's testimony directly contradicted the testimony of three State witnesses who testified that they too were sexually assaulted by Croy. The State responds that Croy cannot show that he was prejudiced by this ruling because (1) the substance of Flynn's testimony was entered into evidence through the testimony of investigating Officer Marilyn Scott; and (2) Croy introduced the testimony of four other defense witnesses whose testimony was very similar in substance to Flynn's.

The substance of Flynn's testimony was presented to the jury through the testimony of Officer Scott. Officer Scott testified that during her interview with Flynn, who was seventeen, he told her that he knew Croy from Parkview and the race track and that he worked on Croy's pit crew. Flynn stated to Officer Scott that Croy never acted inappropriately towards him. Moreover, Flynn's testimony

was nearly identical to the testimony of Cameron Burdess, Charlie Smart, Steven Hill, and Trey Goacher, four defense witnesses who testified at trial that they met Croy in their early to mid-teens, that they worked on his pit crew, that they spent time with Croy alone, and that Croy never inappropriately touched them. Therefore, Croy showed no prejudice resulting from the denial of his continuance motion. As such, we hold that the trial [court] did not abuse its discretion.

*Croy v. State*, 2007 WL 3172144, 1 -2 (October 31, 2007) (Ark. App.).

When the state court has ruled on the merits of a petitioner's claims, a writ of habeas corpus may not be granted unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2). The United States Supreme Court offers guidance in interpreting the statute:

A state court decision will be "contrary to" our clearly established precedent if the state court either "applies a rule that contradicts the governing law set forth in our cases," or "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." A state court decision will be an "unreasonable application of" our clearly established precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."
. . . Distinguishing between an unreasonable and an incorrect application of federal law, we clarified that even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable.

*Penry v. Johnson*, 532 U.S. 782, 792-93 (citations omitted).

Here, we find the Arkansas Court of Appeals decision on the motion to continue was not contrary to, or an unreasonable application of, clearly established federal law. Although the state appellate court did not specifically cite federal law, that failure is not problematic as neither the court's reasoning nor its result contradict federal law.[2] The federal law in this instance is well stated in the *Maggitt v. Wyrick, supra,* case – the asserted error must be so gross, conspicuously

---

[2]"A reasonable application of established federal law does not require citation of [United States Supreme Court] cases – indeed, it does not even require *awareness* of [these] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *See Cox v. Burger*, 398 F.3d 1025, 1030 (8th Cir. 2005) [internal quotations and citations omitted; emphasis in original].

prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford the petitioner the fundamental fairness which is the essence of due process. The Arkansas Court of Appeals' decision is consistent with, and a reasonable application of, applicable federal law. The state court's finding that no prejudice stemmed from the trial court's denial of the motion to continue is necessarily a finding that the trial court's decision did not fatally infect the trial.

Mr. Croy has also not shown that the adjudication of the claim in state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. As noted in the state appellate court decision, the essence of the testimony of witness Flynn was presented when Little Rock Police Officer Marilyn Scott testified that Flynn told her that Croy did nothing inappropriate with Flynn. (Tr. 202). This testimony, coupled with the testimony of the four other witnesses who testified in a similar fashion (that Croy did nothing inappropriate with them), demonstrates that the testimony of Flynn would have added little to the trial. We find no error in the state court's assessment of the trial court's denial of the motion to continue. It follows that no error of constitutional magnitude occurred. There is no merit to the first claim of Mr. Croy.

Petitioner's second claim is that the trial court erred by not requiring the state to produce witness statements. This due process challenge was addressed on direct appeal by the Arkansas Court of Appeals:

> Next, Croy argues that the trial court erred when it did not require the State to produce witness statements. Prior to trial, Croy filed a motion for discovery seeking, among other things, "written or recorded statements and the substance of any oral statements made by Defendant or any other person." The State filed a response describing its "open file" policy whereby defense attorneys can inspect the entire file upon three-days' notice up to three days prior to trial. At trial, defense witnesses Goacher and Burdess testified that they were interviewed by the State, but their witness statements were not included in the State's file. Croy immediately moved for the production of these statements arguing that they contained exculpatory information. The State responded that these were defense witnesses, and all it possessed were notes taken during the interviews, which were work product. The trial court denied Croy's motions for production and motions for mistrial.

In his brief, Croy contends that the trial court violated the Supreme Court of the United State's mandate in *Brady v. Maryland,* 373 U.S. 83 (1963), which holds that the prosecution is required to disclose to a defendant all favorable evidence that is material to either guilt or punishment. Croy further contends that there is no work product exception for the production of witness statements. In *Andrews v. State,* 344 Ark. 606, 42 S.W.3d 484 (2001), our supreme court outlined the three elements of a *Brady* violation: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; (3) prejudice must have ensued. Croy has failed to establish all three of the required elements.

We first note that the State did offer to show its notes to Cray's [Croy's] counsel at trial-Croy did not accept the offer. More importantly, Croy never proffered the notes. Because we cannot determine the substance of the notes, we cannot determine whether they contained exculpatory information. *See Brown v. State,* 368 Ark. 344, 246 S.W.3d 414 (2007) (holding that the supreme court could reach the issue of whether information on a calendar was admissible or prosecutor's work product because the defendant did not proffer the calendar and make it part of the record). Furthermore, because Croy has not presented any evidence demonstrating that the content of the State's notes was any more favorable to him than the already exculpatory testimony of Goacher and Burdess, Croy has failed to show prejudice. We also note that Goacher and Burdess were defense witnesses, and as such, Croy cannot maintain that the State suppressed evidence from the interviews of these witnesses. Croy could have easily interviewed Burdess and Goacher to determine what information they possessed. *See Johninson v. State,* 317 Ark. 431, 878 S.W.2d 727 (1994) (holding that "[a] defendant in a criminal case cannot rely upon discovery as a substitute for his own investigation"). Accordingly, we hold that Croy has failed to establish a *Brady* violation.

*Croy v. State*, 2007 WL 3172144, 2 -3 (October 31, 2007) (Ark. App.).

As with the first claim, we must conduct a two-part inquiry guided by 28 U.S.C. § 2254(d).  First, did the state court's adjudication of this claim result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law?  The federal law applicable in this instance is *Brady v. Maryland,* 373 U.S. 83 (1963), and its progeny. The state court decision cited *Brady* and thoroughly discussed its application.  We find no error in the state court's reasoning or result, and we are particularly impressed that there was no prejudice which flowed from the alleged denial of due process by the trial court's decision.

The second part of the inquiry is whether the adjudication by the state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence

presented.  The facts regarding this claim were apparent at trial.  Foremost among the pertinent

facts were that the witness statements requested by the defense were for defense witnesses, and

that the prosecution offered to provide the defense with the requested material[3] and the defense

did not accept the offer.  We have carefully reviewed the trial transcript, and find no error with

regard to the trial judge's decision on the request for notes of the prosecutor.  There is no merit

in petitioner's second claim for relief.

Mr. Croy's third claim for relief is that he was denied due process when the trial court

erred in admitting 404(b) evidence.  As with claims one and two, the Arkansas appellate court

considered this argument:

> Croy's third argument is that the trial court abused its discretion in admitting
> the testimony of Chris Donley, Jeremy Palmer, and Andrew Brown. Donley, age
> thirty-three at the time of trial, testified that when he was twelve he met Croy at
> the skating rink where Croy was a referee. Croy began giving Donley rides home
> from the rink. Over time, Croy initiated sexual contact with Donley at various
> locations. Donley testified that Croy forbid Donley from having conversations
> with family and friends without his permission. Croy referred to Donley's mother
> and sisters as "whores" and was constantly trying to turn Donley against them.
>
> Brown, now twenty-nine years old, testified he met Croy on his school bus
> when Brown was fourteen. Brown, who was also involved in race-car driving,
> began to work with Croy on his pit crew. Brown testified that he "looked up to
> [Croy]. He's an awesome driver and that's where I learned all my skills from, but
> he also seemed like he had everything. He had a race car, had a big truck, and it's
> just in a 15-year old's eyes, that was real cool." Brown testified that eventually,
> Croy began touching him inappropriately. He testified that they fell into a pattern
> of touching each other's penis, masturbating, and performing, oral sex. Brown
> testified that this occurred over a two to three-year period. Brown also testified
> that Croy tried to alienate him from his family.
>
> Palmer, now twenty-four, testified that when he was thirteen he met Croy
> through some friends involved with car racing. Palmer started working on Croy's
> pit crew. Each day, Palmer rode a bus driven by Croy but instead of getting off at

---

[3]Prosecutor: "He [defense witness Trey Goacher] came in and I talked to him.  There was not like a taped statement or anything like that.  I jotted down little notes.  I'll be happy, even though I think it's work product, to give him that sheet of paper."

Trial judge: "If it was a statement, I think I would probably tend to agree. If it was notes you were taking in anticipation of preparation, I don't think that would be covered, so I'll deny that at this time."  (Tr. 259).

his stop, Palmer testified that he would stay on the bus to the terminal so that Croy could drive him home. Palmer testified that he thought Croy was "pretty cool. I mean he drove a race car and, you know, let me help on the race car and, you know, just [was a] pretty good driver...." Palmer testified that he spent the night at Croy's mom's house and that Croy lived with the Palmer family until Palmer turned eighteen.

Palmer testified that the sexual relationship began when Croy touched Palmer's "privates" and then placed Palmer's hand on Croy's "privates." Croy next put his hand down Palmer's pants. Palmer testified that the sexual activity progressed, leading to oral and anal sex. According to Palmer, these encounters occurred almost daily. Palmer testified that Croy tried to turn Palmer against his friends, girlfriends, and family.

The trial court allowed the testimony of Donley, Palmer, and Brown pursuant to Arkansas Rule of Evidence 404(b). Croy argues that these alleged acts are too remote, as they occurred between twelve to twenty years ago, and therefore, they are not relevant.[FN1]

> FN1. Croy also argues that the prejudicial value of the 404(b) testimony far outweighs the probative value of the testimony and should be excluded pursuant to Arkansas Rule Evidence 403. However, Croy failed to raise this argument below, and therefore, it is not preserved for appeal.

The admission or rejection of evidence under Rule 404(b) is left to the sound discretion of the trial court and will not be disturbed absent a manifest abuse of discretion. *Hernandez v. State,* 331 Ark. 301, 962 S.W.2d 756 (1998). While Rule 404(b) specifically excludes evidence of other crimes, wrongs, or acts to prove the character of a person in order to show that he acted in conformity therewith, the rule does allow the admission of evidence of other wrongs, crimes, or acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ark. R. Evid. 404(b) (2007).

The testimony of Donley, Palmer, and Brown was strikingly similar. They were all boys around the same age when they met Croy. They all met him at places where young boys are easily found-at school, on the school bus, at the skating rink, or at the race track. They all worked on Croy's pit crew. They each testified that they gradually spent more time with Croy, which included him picking them up and taking them places, sleeping over at each other's homes, going camping/hunting, and having dinner with their families. They all considered him a very close friend and/or a father figure. As the relationship progressed, they each testified about how Croy started the physical relationship by touching them inappropriately. Each testified that the touching developed into sexual acts, which occurred daily. Finally, they each testified that Croy tried to alienate them from their families and friends. This testimony clearly demonstrates motive, opportunity, intent, preparation, and planning on the part of Croy, and therefore was admissible under Rule 404(b).

This evidence was also admissible under the pedophile exception of Rule 404(b). The pedophile exception allows evidence of other crimes, wrongs, or acts in cases of child abuse where such evidence helps to prove the depraved sexual

instinct of the accused. *See Greenlee v. State,* 318 Ark. 191, 884 S.W.2d 947 (1994). In *Hernandez, supra,* our supreme court outlined the four factors to be considered when determining whether the pedophile exception applies: (1) the time interval; (2) similarity of acts; (3) intimate relationship; (4) the order of events. The only element that Croy addresses in his brief is the time-interval element, arguing that alleged conduct that occurred twelve to twenty years prior to the alleged sexual assault of the victim is too remote.

We reject Croy's argument. The time interval of the testimony in the present case, twelve to twenty years, falls within the parameters established in our case law and was thus admissible. *See Mosley v. State,* 325 Ark. 469, 929 S.W.2d 693 (1996) (holding that the Rule 404(b) pedophile exception applied to a guilty plea of carnal abuse that was eleven years prior to the charged conduct); *Tull v. State,* 82 Ark.App. 159, 119 S.W.3d 523 (2003) (holding that the Rule 404(b) pedophile exception applied to evidence from the appellant's forty-five year old daughter that she was sexually violated by appellant thirty years ago).

*Croy v. State*, 2007 WL 3172144, 3 -5 (October 31, 2007) (Ark. App.).

We again consider this due process claim by addressing the statutory questions posed in 28 U.S.C. § 2254(d).  With regard to the initial inquiry, we find that the state court did not rule in a fashion that was contrary to, or involved an unreasonable application of, clearly established federal law.  The state court concluded there were two reasons why the evidence of Cory's prior behavior should be admitted: one, the behavior demonstrated "motive, opportunity, intent, preparation, and planning on the part of Croy"; and two, the testimony was admissible under the pedophile exception of Arkansas law.  Mr. Croy cites no federal law which was offended by the state court's reasoning and result in considering the admission of this testimony.  We find that the trial court's ruling did not "fatally infect" the trial and deprive Croy due process.  *Maggitt v. Wyrick*, 533 F.2d 383 (8th Cir. l976).  A review of the transcript shows the prosecution produced witnesses testifying that Croy had done similar acts in the past, while the defense produced witnesses stating that Croy had done nothing inappropriate with them and that they considered him to be a reputable person.  The trial hinged, however, on the testimony of the victim, and any decision on the other witnesses could not have fatally infected the process.

The decision of the state court did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  The facts concerning

12

these witnesses were known and considered prior to the trial, with the trial judge informing the parties in advance of his ruling and why he ruled as he did.  We find no error in the ruling made by the trial judge and affirmed on direct appeal.  Even if we were to assume the state court decisions were erroneous, they would not constitute a due process violation as the decision was not prejudicial to the petitioner, much less "conspicuously prejudicial", as required by *Maggitt v. Wyrick*, *supra.*  The third claim for relief is without merit.

The fourth and final due process challenge of the petitioner is that the trial court erred by allowing the state to present victim-impact testimony from the 404(b) witnesses.  The Arkansas appellate court considered this claim in the following fashion:

> Croy's final argument is that the trial court abused its discretion in admitting victim-impact testimony from Donley and Palmer during sentencing. Croy objected claiming that these witnesses were not the victims in this case, and therefore, their victim-impact testimony was irrelevant and extremely prejudicial. The trial court overruled the objection and allowed the testimony; however, the court limited Donley and Palmer's testimony to facts demonstrating a pattern of sexual abuse and excluded testimony about how Croy affected their lives.

> A trial court's decision to admit or exclude victim-impact testimony during the sentencing phase of trial is reviewed under an abuse of discretion standard. *See Springs v. State,* 368 Ark. 256, 244 S.W.3d 683 (2006). Our supreme court has said that when victim-impact evidence is unduly prejudicial, it may render the trial fundamentally unfair and violate the Due Process Clause. *Walls v. State,* 336 Ark. 490, 986 S.W.2d 397 (1999).

> Arkansas Code Annotated subsections 16-97-103(5) and (6) (Repl.2006) specifically provide that character evidence of the defendant and evidence of aggravating circumstances are relevant to sentencing. The statute further provides that the criteria for departure from the sentencing standards may serve as examples of aggravating circumstances. One of the statutory criteria for departure from the sentencing standards is that the offense was a sexual offense and was part of a pattern of criminal behavior with the same or different victims under the age of eighteen years of age manifested by multiple incidents over a prolonged period of time. Ark.Code Ann. § 16-97-804(c)(2)(F) (Repl.2006).

> We hold that based on these statutory provisions, the trial court did not abuse its discretion in permitting the limited testimony of Donley and Palmer. In fact, the trial court exercised extreme caution on this issue; it only allowed Donley and Palmer testify about the pattern of sexual abuse perpetrated by Croy and prevented them from going into their own personal victim-impact testimony.

> Croy cites *Walls v. State, supra,* and claims that the holding in that case requires reversal here. In *Walls,* a bench trial, the defendant pleaded guilty to raping several young boys. During sentencing, the court allowed one of the rape

13

victims to testify that Walls was responsible for the murders of multiple people. Walls had not been tried or convicted of these murders. Thereafter, on the record, the trial court stated that it found that Walls was responsible for the murders and then sentenced Walls to two forty-year terms and four life terms in prison. *Walls,* 336 Ark. at 492, 496, 986 S.W.2d at 398, 401. On appeal, our supreme court reversed the sentence, holding that the trial court abused its discretion in admitting the victim-impact testimony, because it was irrelevant and highly prejudicial. *Walls,* 336 Ark. at 499-500, 986 S.W.2d at 402.

*Walls* is clearly distinguishable from the case at bar. In *Walls,* the relevance of the victim-impact testimony was called into question because it involved evidence of murders allegedly committed by Walls when he was being sentenced for unrelated rapes. Further, the prejudicial nature of the victim-impact evidence was clear-the trial court stated that it found Walls responsible for the murders based on the victim-impact evidence and then used that evidence to sentence Walls for the rapes.

In the instant case, the victim-impact testimony was clearly relevant because Donley and Palmer testified that Croy sexually assaulted them in almost exactly the same way as Croy sexually assaulted the victim. In addition, the record contains no evidence that the jury used the victim-impact testimony to actually sentence and find Croy responsible for sexually assaulting Palmer and Donley. Because we hold that there was no abuse of discretion by the trial court, we affirm.

*Croy v. State*, 2007 WL 3172144, 5 -6 (October 31, 2007) (Ark. App.).

The statutory framework previously cited in grounds one through three applies to this claim, requiring the petitioner to demonstrate the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1), (2).  He fails to satisfy his burden.  Based upon our review of the trial transcript, we find no error in the trial court's decision regarding the testimony at the sentencing phase.  The Arkansas Court of Appeals aptly described the trial court's actions, stating the trial judge "exercised extreme caution on this issue; it only allowed Donley and Palmer testify about the pattern of sexual abuse perpetrated by Croy and prevented them from going into their own personal victim-impact testimony."  The petitioner does not establish a due process violation because he fails to show the trial court decision violated established federal law or that the decision was based on an unreasonable determination of the facts based on the evidence adduced in state court.

The first four claims are without merit.  The trial transcript shows that the rulings of the trial judge were thorough and well-reasoned.  Even if we were to presume otherwise, the rulings would not amount to due process violations, as these rulings were not at the heart of the trial, which consisted of the compelling testimony of the victim against Mr. Croy.  The petitioner falls far short of demonstrating that any of the first four claims was "so gross" or "conspicuously prejudicial" as to fatally infect the trial.  *Maggitt v. Wyrick, supra.*

**Claims 5-8:** Mr. Croy next advances four challenges to the effectiveness of his trial counsel.  He first urges that his counsel was ineffective for failing to conduct an adequate investigation and review regarding the skin tag near Croy's genitalia.  The trial court held a Rule 37 hearing, considering this claim, and the Arkansas Supreme Court addressed this claim on appeal of the Rule 37 ruling:

> In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Anderson v. State,* 2010 Ark. 404, —— S.W.3d —— (per curiam). Our standard of review requires that we assess the effectiveness of counsel under the two-prong standard set forth by the United States Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *Shipman v. State,* 2010 Ark. 499 (per curiam). Under the *Strickland* test, a petitioner raising a claim of ineffective assistance must first show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment to the United States Constitution. *Id.* A defendant making an ineffective assistance-of-counsel claim must show that his counsel's performance fell below an objective standard of reasonableness. *Miller v. State,* 2011 Ark. 114 (per curiam).

> In order to meet the second prong of the test, the petitioner must show that counsel's deficient performance prejudiced petitioner's defense to such an extent that he was deprived of a fair trial. *Carter v. State,* 2011 Ark. 226 (per curiam). A claimant must show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Mingboupha v. State,* 2011 Ark. 219 (per curiam). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id.*

> In appellant's first point, he contends that trial counsel was ineffective for failing to adequately investigate or take proper photographs of a skin tag near appellant's genitalia, or inquire of the witnesses about the skin tag. At trial, appellant testified that he had a large skin tag next to his testicles on the left side. The trial court admitted into evidence a photograph that appellant had taken of himself that showed the skin tag hanging down between his legs. Counsel pointed out in closing argument that none of the witnesses had mentioned such a

distinctive feature in testifying about the sexual acts. Counsel did not ask the victim or any witness if appellant had a distinguishing feature or if there was anything remarkable in his appearance when undressed.

At the hearing on the Rule 37.1 petition, counsel testified that appellant only told him of the skin tag shortly before trial and that he would have had a doctor testify and would have taken better pictures if he had been given more time to prepare. Appellant countered with testimony that he had told counsel well in advance of the trial. Counsel further testified that he had decided not to ask the witnesses questions because he did not know what answers they might give. He indicated that he followed his chosen trial strategy in waiting to bring out the existence of the skin tag until appellant's testimony and arguing in closing that the witnesses would have mentioned such a distinctive feature if they had actually had oral sex with appellant. Appellant contended that any defense was dependent on effectively challenging the credibility of the victim and the Rule 404(b) witnesses and that counsel's failure to obtain a sufficiently clear photo or question those witnesses about the skin tag was fatal to that defense.

The trial court found that counsel had made a strategic decision not to question the witnesses about the skin tag, that counsel was not ineffective for using the photo introduced into evidence, and that appellant had failed to demonstrate prejudice in that he did not show that the outcome of the trial would have been different if a different photograph had been used. Those findings are not clearly erroneous.

Where a decision by counsel was a matter of trial tactics or strategy, and that decision is supported by reasonable professional judgment, then counsel's decision is not a basis for relief under Rule 37.1. *Kelley v. State,* 2011 Ark. 175 (per curiam); *Anderson,* 2010 Ark. 404, —— S.W.3d ——. A court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance, and a claimant has the burden of overcoming this presumption by identifying specific acts or omissions of trial counsel, which, when viewed from counsel's perspective at the time of the trial, could not have been the result of reasonable professional judgment. *Kelley,* 2011 Ark. 175 (citing *McCraney v. State,* 2010 Ark. 96, —— S.W.3d —— (per curiam)). Counsel testified that he consciously decided to present the evidence concerning the skin tag later. He sought to deprive the prosecution of any opportunity to rehabilitate the witness testimony from what could be construed as significant omissions. Counsel's testimony was that he had concern that the witnesses might have had some knowledge of the growth and given detrimental answers.[FN1] Counsel's actions here fell well within the broad range of conduct that a reasonable professional might choose.

Concerning the photograph and the alleged failure to investigate and prepare, we agree that appellant did not show a reasonable probability that, had counsel prepared as appellant alleged that he should have, the outcome would have been different. Appellant argues that counsel conceded that there was a possibility that the photo might have produced a different result. Appellant's burden was to demonstrate, however, that there was a reasonable probability that the jury's verdict would have been different, not that there was a mere possibility of a different result. Without question, the exhibit introduced at the hearing on the Rule 37.1 petition demonstrated that counsel could have obtained a photograph

16

that was better in showing the exact placement and proximity of the skin tag to appellant's penis. The photograph that was actually introduced at trial, however, was sufficient for the intended purpose. While somewhat less dramatic, the original photograph nevertheless showed a growth that was sufficiently prominent for the jury to conclude that it would be seen by anyone who observed appellant's genitals and would have been a distinctive feature of appellant's anatomy.

*Croy v. State*, 2011 Ark. 284, 3 -6 (Ark.) (*per curiam*).

The disposition of this claim is also governed by 28 U.S.C. § 2254(d). We find that the Arkansas Supreme Court's adjudication of Croy's challenge to his attorney's handling of this issue did not result in a decision that is contrary to, or involved an unreasonable application of, clearly established federal law. The Arkansas appellate court cited the controlling federal law, *Strickland v. Washington*, 466 U.S. 668 (1984), which provides that the petitioner must prove that (l) his attorney's actions were unreasonable when viewed in the totality of the circumstances; and (2) he was prejudiced because there is a reasonable probability that, but for counsel's unprofessional errors, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 688 (l983); *Ryder v. Morris*, 752 F.2d 327, 33l (8th Cir. l985). The Arkansas court's ruling is consistent with, and a reasonable application of, the *Strickland* case. Mr. Croy does not demonstrate that his attorney's actions were unreasonable. The appellate court concluded that the behavior of Croy's attorney "fell well within the broad range of conduct that a reasonable professional might choose." We agree. Even if we were to presume that trial counsel should have acted differently, we find the petitioner does not show that the result of the trial would have been different. The Arkansas courts noted that a photograph was admitted into evidence and Croy testified about the skin tag. In addition, the Arkansas courts stressed the strategic decision that counsel made in not asking the witnesses about the skin tag. Another factor, not mentioned in the Arkansas opinions, supports the finding of the state courts; while the petitioner testified that he had the skin tag since the age of eleven, there was no corroborating evidence of this. Thus, the jury was left to believe Croy on this issue, much like the jury was faced with addressing his claims that he had no sexual contact with the victim.

17

Mr. Croy has also not shown that the adjudication of this claim by the state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  Mr. Croy, represented by new counsel at the Rule 37 proceeding, called trial counsel as a witness and thoroughly explored the reasoning behind the decisions made at trial.  Although Mr. Croy and his trial counsel obviously disagreed on certain facts (e.g., the timing of when Croy made counsel aware of the skin tag), we find the facts were adequately presented to the trial court and we find the state court decisions were not based upon an unreasonable determination of facts.  There is no merit to claim five of Mr. Croy.

The framework used to address claim five applies to claim six, the contention that Croy's counsel was ineffective for failing to investigate and present testimony from numerous character witnesses.  The trial transcript shows that three witnesses testified to the petitioner's character: Ken McMillion, Jeff Engle, and Robert Newsom.  At the Rule 37 hearing, Croy's trial counsel was questioned as to why he did not call additional character witnesses, such as Pastor Larry Ballard, Bob Franklin, Lamar Pickens, Jeremy Watson, Ricky Powell, Tim Croy, and Ann Croy. Docket entry no. 19, page 72, Volume 2.  When asked about character witnesses, Croy's trial counsel answered: "You can only call so many character witnesses.  We called, I think, a sufficient number and they all said good things about Tony."  Docket entry no. 19, page 73, Volume 2.

The trial court denied Rule 37 relief on this claim and the Arkansas Supreme Court addressed the issue on appeal:

> In appellant's next point, he asserts error in the trial court's failing to find counsel was ineffective because he did not investigate or present additional character witnesses. On appeal, appellant contends that counsel did not make a reasoned, strategic decision to call the witnesses presented instead of others that may have been available. He asserts that he was prejudiced because he received the maximum sentence and the witnesses would have been helpful in the sentencing phase. [footnote omitted].
>
> The burden is entirely on the petitioner in a Rule 37.1 proceeding to provide facts that affirmatively support the claims of prejudice. *Payton,* 2011 Ark. 217. It

is incumbent on the petitioner who claims ineffective assistance based on failure to call a witness to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. *Shipman,* 2010 Ark. 499 (citing *Smith v. State,* 2010 Ark. 137, ⸺ S.W.3d ⸺ (per curiam)). Although appellant named a number of witnesses not called and provided some summary of the potential testimony, he did not present those witnesses at the hearing on the Rule 37.1 petition. Because counsel did call a number of character witnesses at trial, appellant failed to demonstrate that these other potential witnesses would have provided more compelling testimony that could have affected the outcome of the trial, either as to the verdict or the sentencing.

Under the circumstances here, we cannot say that the trial court clearly erred in finding that appellant did not demonstrate prejudice concerning these potential witnesses. The fact that there was a witness or witnesses who could have offered testimony beneficial to the defense is not, itself, proof of counsel's ineffectiveness. *Smith,* 2010 Ark. 137, ⸺ S.W.3d ⸺. Even if counsel failed to make a strategic decision not to call a witness, it was nevertheless incumbent on appellant to show that such an error denied him a fair trial. *See id.*

*Croy v. State*, 2011 Ark. 284, 6-7 (Ark.) (*per curiam*).

We find the state court applied the established federal law in addressing this claim. When the appellate court found no prejudice from the failure to call the witnesses, this was an application of the second prong of the *Strickland v. Washington* formula.  The finding of an absence of prejudice was not contrary to, or an unreasonable application of, *Strickland*.  To the contrary, it is clear that calling more character witnesses would not have resulted in a different outcome, as these witnesses testified to Croy's general reputation and did not address the specific claims alleged by the victim.  More character witnesses would have been cumulative to the testimony offered at trial.  The petitioner falls far short of showing some error in applying the appropriate federal law.  In addition, there is no showing that the adjudication of this claim by the state court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  We find the decision rendered in state court was correct based upon the facts presented at the Rule 37 hearing.  There is no merit to the sixth claim advanced by Mr. Croy.

19

For his next claim, Mr. Croy contends his counsel was ineffective for failing to lodge an appropriate objection to the state's presentation of 404(b) testimony.  The state courts addressed this issue, including the Arkansas Supreme Court in its Rule 37 decision:

> Next, appellant contends that counsel was ineffective for failing to preserve the argument that the Rule 404(b) witness testimony should have been excluded under Arkansas Rule of Evidence 403. In order to demonstrate prejudice for a claim that counsel was ineffective for failing to preserve an argument for appeal, a claimant must necessarily show that the argument would have been successful. Trial counsel cannot be ineffective for failing to make an objection or argument that is without merit. *Mitchem v. State,* 2011 Ark. 148 (per curiam). Here, appellant did not demonstrate that counsel could have successfully challenged the admission of the evidence.
>
> In its opinion on direct appeal, the court of appeals addressed the issue of whether the testimony about the other relationships was too remote in time to be admissible and rejected that argument. *Croy,* CACR 06–1039, slip op. at 4–5. Because appellant's argument related to Rule 403, and the weighing of probative value against prejudice under the rule was not preserved, the court of appeals did not address that argument. *Id.,* slip op. at 4. The holding by the court of appeals that the testimony was not so remote as to require its exclusion settles that issue under the law-of-the-case doctrine, although the issue of application of Rule 403 was not adjudicated on appeal. *See Smith v. State,* 2010 Ark. 137, —— S.W.3d —— (per curiam); *Howard v. State,* 367 Ark. 18, 238 S.W.3d 24 (2006).
>
> The balancing mandated by Rule 403 is a matter left to a trial court's sound discretion, and an appellate court will not reverse the trial court's ruling absent a showing of manifest abuse. *Bryant v. State,* 2010 Ark. 7, ——S.W.3d ——. This court has noted that evidence offered by the State is often likely to be prejudicial to the accused, but the evidence should not be excluded unless the accused can show that it lacks probative value in view of the risk of unfair prejudice. *Eubanks v. State,* 2009 Ark. 170, 303 S.W.3d 450 (2009). As the court of appeals noted in its opinion, there were striking similarities in the testimony of the boys. *Croy,* CACR 06–1039, slip op. at 4. The evidence in this case was highly probative, and appellant failed to show that counsel could have prevailed on appeal if the argument had been preserved.

*Croy v. State*, 2011 Ark. 284, 7-9 (Ark.) (*per curiam*).

The state courts again emphasize the lack of any prejudice that the petitioner can show unless he established that his attorney could have successfully challenged the admission of the evidence.  This is an application of the second prong of the *Strickland* standard.  We again find this to be the appropriate federal law, and we find no error in the application of this law.  Even assuming attorney error in failing to properly object to the testimony of these witnesses, no

prejudice accrued since an objection would not have thwarted this testimony.  In addition, we find the state court decision was not based on an unreasonable determination of the facts in light of the evidence presented.  As a result, the statutory requirements of 28 U.S.C. § 2254(d) dictate that there is no merit to the seventh claim of Mr. Croy.

The eighth claim advanced by the petitioner is his final claim of ineffective assistance of counsel; Croy's counsel was ineffective for failing to take proper steps to obtain and review statements from the prosecutor's file.  This contention was addressed in his Rule 37 appellate decision:

> Appellant's final point on appeal alleges that counsel was ineffective for failing to obtain the prosecution's notes on interviews with two defense witnesses.[FN3] More specifically, appellant asserted that counsel should have discovered what was in the notes and proffered the notes into evidence. Appellant contended that, had counsel proffered the notes, the court of appeals would have reached an issue raised on appeal that asserted that the State's failure to disclose the notes prior to trial was a violation of the requirements of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Appellant, however, failed to carry his burden, under those circumstances present in this case, to demonstrate either error by counsel or the requisite prejudice.
>
> Appellant complains that the trial court did not require the State to produce the notes at the hearing on the Rule 37.1 petition. He asserts that the notes may have contained exculpatory information, but that, without the notes, counsel had no way of knowing if that was so. Appellant alleges that counsel was ineffective because he declined an opportunity to review the notes.
>
> This court has held that Rule 37 does not provide for the discovery of evidence. *Cook v. State,* 361 Ark. 91, 204 S.W.3d 532 (2005) (per curiam) (citing *Weaver v. State,* 339 Ark. 97, 103, 3 S.W.3d 323, 328 (1999)). To the extent that appellant asserted that the notes might have contained *suppressed* exculpatory evidence, he provided no factual basis in support of his claim that the notes were necessary to show prejudice.
>
> The holding by the court of appeals that appellant failed to establish a *Brady* violation was not based solely on the fact that counsel did not make a proffer to show that the notes contained exculpatory evidence. The court of appeals also held that any exculpatory evidence was not suppressed because the witnesses were called as defense witnesses and that appellant failed to show that he was prejudiced because he had an opportunity to interview the witnesses. Clearly, there was some exculpatory evidence available from the witnesses that may have been included in the prosecution's notes on its interviews with the witnesses. Defense counsel interviewed the two witnesses before trial, knew how they intended to testify at trial, and presented both as witnesses who testified to their experiences with the defendant that did not involve inappropriate advances. Some

exculpatory evidence that may have been included in the notes clearly was not suppressed.

When counsel was asked what possible use could have been made of the notes, his response was that he thought that he was entitled to look at the notes to see what statements were made that might be used for impeachment. Unlike evidence that may be used to impeach a witness giving incriminating testimony, evidence that the prosecutor might use for impeachment of a defense witness concerning testimony that is exculpatory is not favorable to the defense. A demonstration that the evidence withheld was favorable to the defense is required to demonstrate one of the necessary components of a *Brady* violation. *See Lacy v. State,* 2010 Ark. 388, ⸺ S.W.3d ⸺. Appellant did not provide facts that affirmatively supported his claims of an unchallenged *Brady* violation because he did not demonstrate that the notes might have contained favorable, suppressed evidence. The exculpatory evidence that was favorable to the defense was not suppressed.

We are cognizant that, where an allegation of ineffective assistance involves a *Brady* violation and the failure of counsel to preserve the issue is combined with the prosecution's failure to provide proper discovery, the question of prejudice becomes more complicated. *See Brown v. State,* 2009 Ark. 202, 307 S.W.3d 587. Unlike the situation in *Brown,* however, the issue of error by counsel was not conceded here. Under the circumstances of this case, there was no apparent error by counsel because appellant did not demonstrate that the prosecution's failure to provide the notes to counsel was improper.

*Croy v. State*, 2011 Ark. 284, 9-11 (Ark.) (*per curiam*).

Following the directions from 28 U.S.C. § 2254(d), we answer two questions in addressing this claim.  First, did the state courts rule in a fashion that is contrary to, or an unreasonable application of, *Strickland v. Washington*?  The answer is in the negative.  The petitioner failed to demonstrate that any exculpatory evidence favorable to his cause was suppressed.  The state courts were correct to note that the witness statements (or notes) requested of the prosecutor were from witnesses *called by the defense*.  In summary, the state court decision was not contrary to, or an unreasonable application of the *Strickland* case.  To the contrary, the petitioner failed to demonstrate prejudice stemming from the alleged instance of ineffective assistance of counsel.  Further, the petitioner failed to show that the adjudication by the Arkansas Supreme Court resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.  In this instance, the facts regarding the witness statements or notes were argued during the trial (Tr. 259-260, 263-265, 273-274) and

at the Rule 37 proceeding.  Docket entry no. 19, pages 55-60, Volume 2.  The petitioner has not demonstrated an unreasonable determination of the pertinent facts.

In summary, petitioner's claims five through eight, all allegations of ineffective assistance of counsel, are without merit.  A thorough review of the record shows that Croy's counsel was faced with a difficult challenge.  The victim of the crimes testified credibly, and there was circumstantial evidence from the victim's family and school officials that corroborated his testimony.  Petitioner's counsel tried to counter the state's case with character witnesses and with testimony from Mr. Croy.  However, the jury chose to believe the victim.  The instances of ineffective assistance of counsel alleged by Mr. Croy are not events which would have resulted in a different verdict, even if counsel had acted in a different manner.

**Claims 9-12:** For his final claims, Mr. Croy alleges:

9.      The trial court erred by finding that Croy's counsel was not ineffective when he failed to properly investigate or take proper photographs of a skin tag near Croy's genitalia;

10.     The trial court erred when it found that Croy's counsel was not ineffective for failing to investigate and present testimony of other character witnesses;

11.     The trial court erred when it found that Croy's counsel was not ineffective for failing to lodge an appropriate objection to the testimony of the state's 404(b) witnesses; and

12.     The trial court erred when it failed to find that Croy's counsel was ineffective for failing to obtain, review, and use the prosecution's notes regarding interviews of two witnesses.

These claims mirror claims five through eight, varying only by their focus on the trial court's decision rather than a general challenge to the four claims of ineffective assistance of counsel.  This slight variance, however, does not change the essence of the claims – Mr. Croy is

alleging he received ineffective assistance of counsel.  We have already considered these four claims and found them without merit.  It follows that claims nine through twelve are likewise without merit.

For the foregoing reasons, we recommend that the petition for writ of habeas corpus be dismissed and the relief requested be denied.

Pursuant to 28 U.S.C. § 2253 and Rule 11 of the Rules Governing Section 2554 Cases in the United States District Court, the Court must determine whether to issue a certificate of appealability in the final order. In § 2254 cases, a certificate of appealability may issue only if the applicant has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(1)-(2). The Court finds no issue on which petitioner has made a substantial showing of a denial of a constitutional right. Thus, we recommend the certificate of appealability be denied.

IT IS SO ORDERED this  23  day of May, 2012.


_____
UNITED STATES MAGISTRATE JUDGE

24